IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-404

No. COA21-546

Filed 21 June 2022

Mecklenburg County, No. 21 CVS 767

LISA BIGGS FORE, Plaintiff,

v.

THE WESTERN NORTH CAROLINA CONFERENCE OF THE UNITED METHODIST CHURCH (a/k/a WESTERN NORTH CAROLINA CONFERENCE); and THE CHILDREN'S HOME, INCORPORATED (a/k/a THE CHILDREN'S HOME, a/k/a THE CROSSNORE SCHOOL & CHILDREN'S HOME, a/k/a CROSSNORE CHILDREN'S HOME), Defendants.

Appeal by defendants from order entered 11 June 2021 by Judge Lisa C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 April 2022.

*Janet Janet & Suggs, LLC, by Richard Serbin and Matthew White, for plaintiff-appellee.*

*Ogletree Deakins, by Kelly S. Hughes and Ashley P. Cuttino, admitted pro hac vice, for defendant-appellant The Western North Carolina Conference of the United Methodist Church (a/k/a Western North Carolina Conference).*

*Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidus, G. Gray Wilson and D. Martin Warf, for defendant-appellant The Children's Home, Incorporated (a/k/a The Children's Home, a/k/a The Crossnore School & Children's Home, a/k/a Crossnore Children's Home).*

TYSON, Judge.

¶ 1     The Western North Carolina Conference of the United Methodist Church ("WNCCUMC") and The Crossnore School & Children's Home ("Children's Home") (together "Defendants") purport to appeal a trial court's *ex parte* order directing disclosure of non-joined, third-party records of alleged child sexual abuse. We dismiss this interlocutory appeal without prejudice.

## I.     Background

¶ 2     Plaintiff asserts she was sexually abused as a minor, while she resided at The Children's Home in Winston-Salem during the 1970s. Plaintiff claims she reported the alleged abuse by her former Children's Home employee-parents to officials in Rockingham County. Plaintiff filed a civil action in Mecklenburg County Superior Court against Defendants on 6 January 2021. Plaintiff claims Defendants negligently supervised the staff and breached fiduciary duties they owed to her.

¶ 3     Defendants filed motions to dismiss Plaintiff's complaint under Rule 12(b)(6), contending 2019 N.C. Sess. Laws 5 § 4.2(b) and N.C. Gen. Stat. § 1-56(b) (2021) are unconstitutional as-applied to them under Article I, Section 19 of the North Carolina Constitution. WNCCUMC moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(1). These motions remain pending before the trial court.

¶ 4     On 3 June 2021, Plaintiff filed a motion for production of criminal investigation records pursuant to N.C. Gen. Stat. § 132-1.4 (2021). Plaintiff's motion sought

confidential records of alleged child sexual abuse by any Children's Home employee against any minor residing therein from the surrounding counties' sheriff's offices, Departments of Social Services, and police departments.

¶ 5        Plaintiff prepared a proposed order and submitted it along with her motion, which was mailed to the Mecklenburg County Clerk's Office for filing. Plaintiff did not file nor serve a notice of hearing on her motion for production of records on Defendants. On 11 June 2021, the trial court entered Plaintiff's proposed order, *ex parte*. The order decreed the various agencies and departments:

> *shall produce any and all information in whatever form it exists in connection with the alleged child sexual abuse* committed by [employee parents] or other employees of the Children's Home alleged to have sexually abused and/or engaged in sexual activities with a minor while a resident of the home. (emphasis supplied).

¶ 6        Defendants filed notice of appeal, separately sought and obtained a temporary stay, and petitioned for and obtained a writ of supersedeas.

## II.    Jurisdiction

¶ 7        Defendants' appeal is clearly interlocutory. Appellate review is proper pursuant to N.C. Gen. Stat. § 7A-27(b)(3) if the party proves one of the requirements therein.

¶ 8        "An order is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to

finally determine the rights of all the parties involved in the controversy.*" Flitt v. Flitt*, 149 N.C. App. 475, 477, 561 S.E.2d 511, 513 (2002) (citation omitted). Defendant is entitled to review "where 'the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.'" *Id.* (citation omitted).

### III.    Argument

¶ 9        Defendants argue their substantial rights are violated because they were not given prior notice and an opportunity to oppose Plaintiff's motion for the production of alleged child sexual abuse records of non-joined third parties from surrounding county public entities.  For nearly seventy years, the courts of this state have held:

> *The notice required by these constitutional provisions in such proceedings is the notice inherent in the original process* whereby the court acquires original jurisdiction, and not notice of the time when the jurisdiction vested in the court by the service of the original process will be exercised . . . *After the court has once obtained jurisdiction in a cause through the service of original process, a party has no constitutional right to demand notice of further proceedings in the cause.*

*Collins v. Highway Commission,* 237 N.C. 277, 281, 74 S.E.2d 709, 713 (1953) (emphasis supplied).

¶ 10        Defendants cite *Mission Hosps., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 189 N.C. App. 263, 270, 658 S.E.2d 277, 281 (2008), and *Pask v. Corbitt*, 28 N.C. App. 100, 104, 220 S.E.2d 378, 382 (1975), to support their contention they were entitled

to prior notice of the hearing. Defendants' reliance on these cases is misplaced.

¶ 11 *Mission Hospital* was a DHHS agency appeal, in which the party had directly violated North Carolina statutes forbidding a "member or employee of the agency making a final decision in the case [from] communicat[ing] , *directly or indirectly*, in connection with any issue of fact, or question of law, *with any person or party or his representative, except on notice and opportunity for all parties to participate." Mission Hosps., Inc.*, 189 N.C. App. at 270, 658 S.E.2d at 281 (emphasis supplied) (citation omitted).

¶ 12 In *Pask*, the plaintiff filed a motion to add parties to the action pursuant to Rule 21 of our Rules of Civil Procedure, and this Court noted, "[l]ong prior to the adoption of G.S. 1A-1, Rule 21, North Carolina has held that existing parties to a lawsuit are entitled to notice of a motion to bring in additional parties." *Pask*, 28 N.C. App. at 103, 220 S.E.2d at 381. The facts and issues in *Mission Hospital* and *Pask* are wholly inapposite from those before us and do not show a substantial right to immediate review.

¶ 13 Here, both Defendants have been haled into court by five different plaintiffs under recent legislation titled SAFE Child Act, 2019 N.C. Sess. Laws 5 § 4.2(b). This statute revived previously time-barred claims for child sexual abuse for a period of two years. *Id.* The plaintiffs in the first two cases filed and served written discovery requests on Defendants. Defendants failed to produce any responses to discovery to

date, instead delaying with objections to each request and a reference to pending motions for a protective order which they have not noticed for hearing.

¶ 14     Before Plaintiff could serve any written discovery requests, Defendants filed a motion to stay discovery pending the outcome of their motions to dismiss. Plaintiff was left with the choice to proceed without discovery or to file the contested motion seeking alternative means of locating evidence to support her claims.

¶ 15     Unlike the requirements in *Mission Hospital* and *Pask*, no statute or constitutional provision under these facts requires Plaintiff to provide prior notice to Defendants for a hearing seeking criminal records of non-joined third parties from public entities, and which may affect Defendants' prior employees, who are not joined as parties herein. Further, Defendants were aware through prior discovery requests of Plaintiff's demand and intent to obtain the evidence. No formal notice was needed, because the order to produce was related and made to, and was obtained from, non-joined third parties.

¶ 16     Defendants' arguments are without merit asserting prior notice of a records request to public entities concerning non-joined third parties as a substantial right to an immediate appeal. As further discussed below, Defendants have shown no "substantial right which would be lost absent immediate review." *Flitt*, 149 N.C. App. at 477, 561 S.E.2d at 513 (citations and internal quotation marks omitted).

## IV.    Jus Tertii

¶ 17        Purported claims or rights of a third party cannot be asserted as a defense by an unrelated litigant. "In general, *jus tertii* cannot be set up as a defense by the defendant, unless he can in some way connect himself with the third party." *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 592, 2021-NCSC-6, ¶ 60, 853 S.E.2d 698, 723 (2021) (*quoting Holmes v. Godwin*, 69 N.C. 467, 470 (1873)).

¶ 18        *Jus Tertii* is a principle of law prohibiting a party from raising the claims or rights of third parties. *Id.* (citation omitted). *Jus Tertii* is defined as: "The right of a third party. The doctrine that [. . .] courts do not decide what they do not need to decide." *Jus Tertii,* Black's Law Dictionary (11th ed. 2019). "A *jus tertii* situation arises when the defendant has no defense of his own but wishes to defeat the plaintiff's action by alleging a defect in the plaintiff's title or the fact that the plaintiff has no title at all*." Jus Tertii Under Common Law and the N.I.L.*, 26 St. John's L. Rev. 135, 135 (1951).

¶ 19        The Idaho Supreme Court provides persuasive guidance in an illustrative case of mistaken assertion by a defendant of rights owned by a non-joined third party. *Gissel v. State*, 727 P.2d 1153, 1154 (Idaho 1986). Gissel had unlawfully harvested wild rice growing on lands jointly owned by the State of Idaho and the United States National Forest Service. *Id.* Gissel was convicted in state court of trespass. *Id.* Idaho officials seized and sold the harvested rice. *Id.* Because the State of Idaho owned only a one-half interest in the land, Gissel challenged the state's authority to

seize, sell, and keep all profits from the sale of the rice. *Id.*

¶ 20        The Idaho Supreme Court held Gissel was entitled to one-half of the proceeds from the sale, because the State of Idaho did not effectively join or make the *jus tertii* argument on behalf or under the authority of the United States National Forest Service. *Id.* at 1156. "The Gissels, though trespassers and without legal title, which title rests with the Forest Service, still by mere possession have greater rights superior to that of the state" to the other one-half of the proceeds from the sale. *Id.*

¶ 21        Defendants are barred from asserting any of DSS' or non-joined former employees' third parties' purported rights to notice of records as a *jus tertii* defense, when neither are parties to this action, Defendants cannot collaterally attack the orders and judgment entered in other cases to which they were not a party. *Id.*

¶ 22        Plaintiff's motion to the court does not need a "mother may I" from Defendants to obtain relevant evidence to support their claims, particularly where Defendants are non-responsive to and delaying their access to that evidence. N.C. Gen. Stat. § 132-1.4(a) (2021); *Collins,* 237 N.C. at 281, 74 S.E.2d at 713. Their purported assertions of entitlement to prior notice of a motion seeking non-party and third-party records to challenge the order are without merit.

## V.    Standing

¶ 23        "Every claim shall be prosecuted in the name of the real party in interest[.]" N.C. Gen Stat. § 1A-1, Rule 17(a) (2021). "The real party in interest is the party who

by substantive law has the legal right to enforce the claim in question." *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 19, 234 S.E.2d 206, 209 (1977) (citation omitted).

¶ 24 Here, Defendants are not the real party in interest relating to the request for records. Defendants are not the party investigated in the records requested. In fact, the records were requested from non-joined third-parties. Only those parties whose records were requested are "the real party in interest" with standing to challenge the motion to produce those records. Defendants do not have standing to challenge the motion in this case because they are not the real party in interest. *Id.*

## VI. Records of Criminal Investigations

¶ 25 Presuming, *arguendo,* Defendants should have been given prior notice of the hearing under any theory, Defendants are not the subject of the criminal investigation records and were not entitled to prior notice on those grounds. Defendants and our dissenting colleague argue the production of the criminal records and investigation of purported former employees ordered by the court will violate Defendants' procedural and substantial rights.

> Records of criminal investigations conducted by public law enforcement agencies, records of criminal intelligence information compiled by public law enforcement agencies, and records of investigations conducted by the North Carolina Innocence Inquiry Commission, are not public records as defined by G.S. 132-1. *Records of criminal investigations conducted by public law enforcement agencies or records of criminal intelligence information may be released by order of a court of competent*

*jurisdiction.*

N.C. Gen. Stat. § 132-1.4(a) (2021) (emphasis supplied). Unlike the cases Defendants rely upon, the statute includes no restrictions on the trial court's power and discretion to release criminal investigation records, nor assert any right or requirement of prior notice to non-parties.

Further, Defendants have not shown they are "aggrieved" parties to merit immediate review. *See Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000) ("[O]nly a 'party aggrieved' may appeal a trial court order or judgment, and such a party is one whose rights have been directly or injuriously affected by the action of the court.") (citation omitted).

The record on appeal also omits the facts, pleadings, and orders from this Court on Defendants' motion for temporary stay, which was allowed on 12 July 2021, and their petition for a writ of supersedeas, which was allowed on 21 August 2021, staying the trial court's order "pending the outcome of petitioner's appeal to this Court." Our dissenting colleague agrees "this writ of supersedeas references the appeal before us." That order remains unaffected by the dismissal of this interlocutory appeal.

## VII. Conclusion

Defendants have failed to carry their burden to show their substantial rights were violated by the superior court's order to warrant an immediate interlocutory review. Defendants moved for and received a temporary stay and petitioned for a

writ of supersedeas, which this Court allowed. With no Rule 54(b) certification or showing of a substantial right which will be lost without immediate review, Defendants' interlocutory appeal is denied. This case is dismissed without prejudice.

DISMISSED WITHOUT PREJUDICE.

Judge ZACHARY concurs.

Chief Judge Stroud dissents with separate opinion.

STROUD, Chief Judge, dissenting.

¶ 29    The Majority's opinion dismisses Defendants' appeal on the ground it is interlocutory and Defendants cannot show a Rule 54(b) certification or loss of a substantial right absent immediate review.  I agree Defendant's appeal is interlocutory and the trial court has not issued a Rule 54(b) certification.  But I believe Defendants have demonstrated a substantial right because the trial court entered an *ex parte* order with no notice to the Defendants; the trial court should not take any action without proper notice of the hearing to all parties.  Defendants have also demonstrated a substantial right based on the statutory protections they claim the *ex parte* order violates.  Turning to the merits, I would hold the trial court erred both because it entered the order *ex parte*, without statutory authority to do so without notice to Defendants, and because the order released Department of Social Services ("DSS") records and law enforcement records of child abuse investigations protected by North Carolina General Statute § 7B-2901(b) without following its plain, unambiguous language about giving DSS proper notice and a chance to be heard.  Finally, I disagree with the Majority Opinion when it claims the writ of supersedeas remains unaffected by our dismissal of this appeal.

¶ 30    "Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure."  *Matter of Duvall*, 268 N.C. App. 14, 19, 834 S.E.2d

177, 181 (2019) (quoting *Lankford v. Idaho*, 500 U.S. 110, 126, 111 S. Ct. 1723, 1732 (1991)). "In addition to prior notice, a 'fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 902 (1976)) (internal quotations and citation from *Mathews* omitted). These fundamental components of due process extend to the issue at hand where Defendants had no notice of Plaintiff's request to the trial court for entry of an *ex parte* order requiring disclosure of documents from DSS and several law enforcement agencies to Plaintiff. *See In re Officials of Kill Devil Hills Police Dept.*, 223 N.C. App. 113, 118, 733 S.E.2d 582, 587 (2012) (finding a due process violation when the trial court entered an order "without providing notice or opportunity to be heard"). For example, in *In re Officials of Kill Devil Hills Police Dept.*, this Court found a trial court violated the appellants' due process rights when it ordered them to turn over police personnel files because the implicated officers had no "notice or opportunity to be heard" since the trial court had never conducted a hearing. *Id.*, 233 N.C. App. at 114, 118, 733 S.E.2d at 584–85, 587. Here, likewise the trial court's actions raised due process concerns by granting Plaintiff's motion without hearing or prior notice to Defendant and ordering various government entities, including police departments and DSS, to turn over a broad range of documents regarding investigations of abuse of minors without any notice or an opportunity to be heard.

¶ 31    These due process concerns allow Defendants to demonstrate the trial court's interlocutory *ex parte* order "affects some substantial right claimed by . . . [them] and will work an injury to [them] if not corrected before an appeal from the final judgment." *Department of Transp. v. Rowe*, 351 N.C. 172, 174–75, 521 S.E.2d 707, 709 (1999) (quoting *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). This Court has "previously recognized the 'constitutional right to due process is a substantial right.'" *Hall v. Wilmington Health, PLLC*, 2022-NCCOA-204, ¶ 20 (quoting *Savage Towing Inc. v. Town of Cary*, 259 N.C. App. 94, 99, 814 S.E.2d 869, 873 (2018)). Since the trial court entered an *ex parte* order without notice to Defendants and thereby implicated their due process rights, Defendants have demonstrated a substantial right sufficient to allow us to hear their appeal from an interlocutory order.

¶ 32    The Majority Opinion rejects Defendant's notice argument by relying on *Collins v. N. Carolina State Highway & Pub. Works Comm'n*, 237 N.C. 277, 74 S.E.2d 709 (1953), to contend constitutional notice only requires notice of the original proceeding. But the constitutional due process landscape has developed significantly since 1953. As part of those developments, this Court has recognized "engaging in *ex parte* communications with one party without notice to the other parties" in the middle of proceedings violates due process. *See Mission Hospitals, Inc. v. N.C. Dept. of Health and Human Services, Div. of Facility Services*, 189 N.C. App. 263, 265, 267–

69, 658 S.E.2d 277, 278, 280–81 (2008) (so holding when, after a hearing but before issuing the final agency decision, the decision-maker received additional materials and argument *ex parte*). The Majority Opinion dismisses *Mission Hospitals* on the grounds it relied on a statutory violation, but this Court clearly concluded the *ex parte* actions "compromised [appellant's] due process rights." *Id.*, 189 N.C. App. at 269, 658 S.E.2d at 281.

¶ 33        The Majority Opinion also contends Defendants cannot immediately appeal because they are not aggrieved parties given the statutes at issue here do not require Plaintiff to provide Defendants notice about a hearing on Plaintiff's receipt of records from third parties. The Majority Opinion relies on *Bailey v. State*, 353 N.C. 142, 540 S.E.2d 313 (2000), to argue only an aggrieved party can appeal a trial court order or judgment. First, it is not clear *Bailey* applies to the situation here. *Bailey* involved a case where a non-party, our State's Attorney General, attempted to appeal a case in which he was not a party. 353 N.C. at 156, 540 S.E.2d at 322. By contrast, here Defendants-Appellants are parties.

¶ 34        Second, Defendants are aggrieved parties. "A party aggrieved is one whose legal rights have been denied or directly and injuriously affected by the action of the trial court." *In re Winstead*, 189 N.C. App. 145, 151, 657 S.E.2d 411, 415 (2008) (quotations and citation omitted). Here, Defendants did not receive the notice of the hearing they were supposed to receive, thereby implicating their due process rights.

As a result, Defendants are aggrieved parties who can appeal the order at issue. *See Wachovia Bank & Trust Co., N.A. v. Parker Motors, Inc.*, 13 N.C. App. 632, 634, 186 S.E.2d 675, 677 (1972) (linking whether a party is aggrieved to whether the order affects a substantial right).

¶ 35    In addition—as part of an argument that Defendants were not entitled to notice because they are not the subject of the requested criminal investigation records and thus do not have a substantial right—the Majority Opinion addresses only the Public Records statute regarding release of records of criminal investigations, but the records covered by the trial court's order include records of abuse of juveniles investigated by two Departments of Social Services in addition to records of law enforcement agencies. All the records sought, both as to criminal investigations and investigations by DSS, address sexual abuse of minor children. Confidentiality of records of child abuse and statutory procedures for release of these records is addressed in Chapter 7B, Article 29 of the General Statutes, specifically in North Carolina General Statute § 7B-2901(b)(2) (2021).

¶ 36    The Majority Opinion does not discuss Chapter 7B but relies solely upon North Carolina General Statute § 132-1.4, which deals with the limitations upon public records in the context of law enforcement investigations. N.C. Gen. Stat. § 132-1.4 (2021). As a general rule, "[t]he Public Records Act does not provide for disclosure of records of criminal investigations or criminal intelligence information . . . ." *Gannett*

*Pacific Corp. v. North Carolina State Bureau of Investigation*, 164 N.C. App. 154, 160–61, 595 S.E.2d 162, 166 (2004).  "Because records of criminal investigations and records of criminal intelligence information are not public records, a party seeking disclosure of such records must seek release 'by order of a court of competent jurisdiction.'"  *Id.*, 164 N.C. App. at 157, 595 S.E.2d at 164 (quoting N.C. Gen. Stat. § 132-1.4(a) (2003)[1]).  This Court has previously recognized that the fact that a criminal investigation has concluded does not convert records of criminal investigations into public records because the justifications for protection of these records remain even after an investigation has ended:

> As noted by our Supreme Court,
>
> > "[i]t is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings. Further, the investigative techniques of the investigating body would be disclosed to the general public." An equally important reason for prohibiting access to police and investigative reports arises from recognition of the rights of privacy of individuals mentioned or accused of wrongdoing in unverified or unverifiable hearsay statements of others included

---

[1] The current version of § 132-1.4(a) contains the same language quoted by *Gannett*; the only change since the 2003 version of the statute is the addition of protection for records of investigations from the North Carolina Innocence Inquiry Commission.  *Compare* N.C. Gen. Stat. § 132-1.4(a) (2003) *with* N.C. Gen. Stat. § 132-1.4(a) (2021).

in such reports.

> [*News and Observer v. State; Co. of Wake v. State; Murphy v. State*, 312 N.C. 276,] 282–83, 322 S.E.2d [133,] 138 [(1984)] (citations omitted) (quoting *Aspin v. Department of Defense*, 491 F.2d 24, 30 (D.C.Cir.1973)).

*Gannett Pacific Corp.*, 164 N.C. App. at 160, 595 S.E.2d at 166 (first alteration in original; case citations added). And the records Plaintiff sought deal with abuse of minors. Because the records deal with child abuse, §132-1.4 *specifically* requires compliance with Article 29 of Chapter 7B: "Records of investigations of alleged child abuse shall be governed by Article 29 of Chapter 7B of the General Statutes." N.C. Gen. Stat. § 132-1.4(*l*) (2021). Within Article 29 of Chapter 7B, North Carolina General Statute § 7B-2901(b)(2) specifically provides for notice to DSS in civil actions when a party seeks these types of records in a civil action and DSS is not already a party, thereby refuting the Majority Opinion's conclusion § 132-1.4 does not require prior notice to non-parties or entities that are not the subject of the criminal investigations.

¶ 37 The Majority Opinion further claims Plaintiff had no choice but to pursue her case without discovery or to file the motion to seek to locate evidence to support her case. Certainly Plaintiff has the option of seeking to locate evidence by requesting records from the law enforcement agencies and Departments of Social Services, but Plaintiff still has the obligation to follow statutory procedures in seeking these

records and to give all parties to her lawsuit notice before asking the trial court to enter an order. Plaintiff was entitled to seek production of records, but she was not entitled to do so without following statutory procedures and without notice to Defendants—because Defendants are *parties* to this case, not because information in records is about Defendants.

¶ 38        The Majority Opinion finally notes there is no specific statute requiring Defendants to have notice of the hearing before the trial court, but *ex parte* hearings are the exception to the general rule and are allowed only in specific circumstances, as recognized by Rule 5 of the North Carolina Rules of Civil Procedure. Under Rule 5, "every written motion *other than one which may be heard ex parte*, and every written notice, appearance, demand, offer of judgment and similar paper shall be served upon each of the parties." N.C. Gen. Stat. § 1A-1, Rule 5(a) (2021) (emphasis added). Numerous other rules reinforce the importance of and ensure the provision of notice. *See* General Rules of Practice for the Superior and District Court, Rules 6 (2021) (indicating "[m]otions may be heard and determined either at the pre-trial conference or on motion calendar as directed by the presiding judge"), 7 (requiring plaintiff and defendant attorneys to work together to schedule a pre-trial conference), 2(b) (indicating civil calendar be published "no later than four weeks prior to the first

day of court")[2]; 26 Jud. Dist. Sup. Civil R. 12.1–12.3 (2021) (local rules applicable to Mecklenburg County Superior Court requiring filing party to calendar motions for a hearing and then file a "notice of hearing" which then "will be served on counsel for the opposing party or parties" within two business days); N.C. R. Prof. Conduct 3.5(a)(3), (d) (2021) (barring attorneys from communicating *ex parte* "with the judge or other official regarding a matter pending before the judge or official" except where "authorized to do so by law or court order" where "[e]*x parte* communication means a communication on behalf of a party to a matter pending before a tribunal that occurs in the absence of an opposing party, without notice to that party, and outside the record"); North Carolina Code of Judicial Conduct Canon 3(A)(4) (2021) ("A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither knowingly initiate nor knowingly consider *ex parte* or other communications concerning a pending proceeding."). Plaintiff did serve her motion on Defendants, but she did not serve any notice of hearing or notification that she would be

---

[2] The current version of the Rules of Practice for Superior and District Court now includes slightly different language around notice. *See* General Rules of Practice for the Superior and District Court, Rule 6 (eff. 1 Sept. 2021) (requiring an attorney "scheduling a hearing on a motion" to "make a good-faith effort to request a date for the hearing on which each interested party is available" except "if a motion is *properly* made ex parte" (emphasis added)).

requesting the trial court to enter an order without a hearing, and she has not identified any statutory basis to have had her motion heard *ex parte*.

¶ 39        Beyond the due process notice issue, Defendants also have a substantial right on the grounds they are asserting a statutory privilege. In *Sharpe v. Worland*, our Supreme Court recognized when "a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right . . . ." 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999). This Court then extended the "reasoning set forth in *Sharpe*" to find an appeal "affect[ed] a substantial right" where the defendants challenged an order compelling discovery on the grounds it would lead to the release of "juvenile records, social services records, [and] law enforcement records" in violation of statutes requiring a court order to release those records, including North Carolina General Statutes §§ 7B-2901(b) and 132-1.4, both of which are at issue here.[3]  *Jane Doe 1 v. Swannanoa Valley Youth Development Center*, 163 N.C. App. 136, 139, 592 S.E.2d 715, 717–18

---

[3] Specifically, the defendants there challenged the order releasing those records on the grounds the North Carolina Industrial Commission was not a court that could order disclosure of the records as required by statute, but this Court found the Industrial Commission was a court for these purposes. *Jane Doe 1*, 163 N.C. App. at 139, 592 S.E.2d at 718.  Regardless of the specific nature of the defendants' challenge on the merits in that case, *Jane Doe 1* should guide our decision here on the question of whether Defendants have demonstrated a substantial right because it found defendants asserting the same statutory protections at issue here had shown a substantial right as laid out above.

(2004). Given Defendants here are asserting the same statutory privilege this Court, with the Majority Opinion's author concurring, determined implicated a substantial right before, Defendants' appeal here also involves a substantial right.

¶ 40        *Jane Doe 1* informs whether Defendants asserted a substantial right here despite the fact that case involved a discovery request directly to its defendants. *Id.*, 163 N.C. App. at 137–38, 592 S.E.2d at 717. In addition to my previous response to the Majority Opinion's aggrieved party argument, in *Jane Doe 1*, the defendants were not asserting a statutory privilege they explicitly directly held. Focusing on one of the common statutes at issue, North Carolina General Statute § 7B-2901(b), the protections there, based on the statute in effect in 2004, only indicated records "may be examined only by order of the court." N.C. Gen. Stat. § 7B-2901(b) (2003). The statute was silent on whether a party in litigation who did not hold those records could assert the protection afforded by § 7B-2901(b). *Id.* Despite the statute not stating they held the statutory protection, the defendants in *Jane Doe 1* had a substantial right based on asserting such protection, 163 N.C. App. at 139, 592 S.E.2d at 717–18, and similar reasoning applies here. Although the current statute does not say Defendants hold the statutory privilege, *see* N.C. Gen. Stat. § 7B-2901(b)(2) (2021) (providing for DSS to have "reasonable notice and an opportunity to be heard"), they can still claim a substantial right by asserting such protection.

¶ 41 Thus, on both due process notice grounds and statutory privilege grounds, Defendants have shown they have a substantial right which will be lost without review of their interlocutory appeal. I therefore dissent from the dismissal of the appeal.

¶ 42 Turning to the merits of the case, I would hold the trial court erred because § 7B-2901(b)(2) explicitly requires notification to DSS and in camera review of any records which may be released and that did not occur here. Specifically, § 7B-2901(b)(2) states records kept by DSS about juveniles under their care or court placement "may be examined only in the following circumstances":

> . . .

> (2) A district or superior court judge of this State presiding over a civil matter in which the department [DSS] is not a party may order the department to release confidential information, *after providing the department with reasonable notice and an opportunity to be heard* and then determining that the information is relevant and necessary to the trial of the matter before the court and unavailable from any other source. This subsection shall not be construed to relieve any court of its duty to conduct hearings and make findings required under relevant federal law before ordering the release of any private medical or mental health information or records related to substance abuse or HIV status or treatment. *The department may surrender the requested records to the court, for in camera review, if surrender is necessary to make the required determinations.*

> . . .

N.C. Gen. Stat. § 7B-2901(b) (emphasis added).  The plain, unambiguous language of the statute requires DSS to receive notice and an opportunity to be heard before Plaintiff can examine the DSS records to which she is granted access under the trial court order.  "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."  *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990).  Here, therefore, the trial court had to give DSS notice and an opportunity to be heard.  Since nothing in our record indicates DSS received such notice or chance to be heard, I would hold the trial court erred.

¶ 43        This case also involves the scenario this statute aims to avoid.  Section 7B-2901(b) provides for DSS to keep a list of sensitive records under protective custody and then includes a catch-all provision to protect "other information which the court finds should be protected from public inspection in the best interests of the juvenile." N.C. Gen. Stat. § 7B-2901(b).  And as noted above, these same provisions apply to the records of the law enforcement agencies to the extent the records deal with investigations of child abuse, under North Carolina General Statute § 132-1.4(*l*). Based on the catch-all provision, the purpose of the statute is to protect sensitive information in the best interest of the juvenile.  Section 7B-2901(b)(2) builds on that purpose by placing upon trial courts a further duty to help protect the sensitive information by ensuring DSS has notice and an opportunity to be heard before

determining if the information "is relevant and necessary to the trial of the matter before the court and unavailable from any other source." *Id.* at (b)(2). These procedures help protect victims of abuse, in this case sexual abuse, who are not parties to the case because they ensure someone—specifically the trial court—can decide what should and should not be released and any conditions placed on the release. For example, even if the records Plaintiff seeks here are released to Plaintiff, they would likely be placed under seal and not simply released to the Plaintiff's attorney with no restrictions on how they are used or shared. By not following the DSS notification procedures laid out in § 7B-2901(b)(2), the trial court has not fulfilled its duty under the statute to protect this sensitive information about victims of sexual abuse.

¶ 44        Finally, the Majority Opinion implies this Court's writ of supersedeas will remain in effect to stay the *ex parte* discovery order before us despite the dismissal of the appeal, thus preventing the wholesale release of records of sexual abuse of children, now adults, who may be harmed by the public release of this information. But the writ will not prevent the release of the records because it will no longer have any effect. "'Supersedeas' is a writ issuing from an appellate court to preserve the status quo *pending the exercise of the appellate court's jurisdiction, is issued only to hold the matter in abeyance pending review*, and may be issued only by the court in which an appeal is pending." *City of New Bern v. Walker*, 255 N.C. 355, 356, 121

S.E.2d 544, 545–46 (1961) (per curiam) (all emphasis included has been added; emphasis from original removed) (citing *Seaboard Air-Line R. Co. v. Horton*, 176 N.C. 115, 96 S.E.2d 956 (1918)).  In other words, the writ of supersedeas only applies when the appeal is pending before this Court.  *See Craver v. Craver*, 298 N.C. 231, 237–38, 258 S.E.2d 357, 362 (1979) ("The writ of supersedeas may issue only in the exercise of, and as ancillary to, the revising power of an appellate court; its office is to preserve the *status quo pending the exercise of appellate jurisdiction*." (emphasis added after "status quo")).  The writ of supersedeas in this case recognizes that it only applies while this appeal is pending; it states, the *ex parte* order on appeal "is hereby stayed *pending the outcome of petitioner's* [Defendants'] *appeal to this Court*."[4]  COA# P21-243, Dkt. No. 1 (24 August 2021) (emphasis added).  The Majority Opinion dismisses Defendants' appeal, and thus the writ of supersedeas can have no further effect; there is no longer an appeal pending to which its power can attach.  The writ of supersedeas here and writs of supersedeas in general only apply when the appeal in connection with which they are issued is pending, and once the Majority Opinion dismisses the

---

[4] The writ of supersedeas provides as follows: "The order entered by Judge Lisa C. Bell on 11 June 2021 ordering production of records in the custody of the Winston-Salem Police Department, the Richmond County Sheriff's office, the Richmond County Department of Social Services, the Richmond County Juvenile Division, the Richmond County Court, the Forsyth County Sheriff's office, and the Forsyth County Department of Social Services is hereby stayed pending the outcome of petitioner's appeal to this Court."  COA# P21-243, Dkt. No. 1 (24 August 2021).  The order referenced in the writ of supersedeas is the order on appeal here.

interlocutory appeal, the plain language of the writ here instructs the order on appeal is no longer stayed.

¶ 45        Because I believe Defendants have shown a substantial right on both due process and statutory grounds, I would not dismiss their appeal as interlocutory. Further, because Defendants were entitled to notice of the hearing of Plaintiff's motion by the trial court and the plain, unambiguous language of § 7B-2901(b) also requires the trial court to give DSS notice and the chance to be heard before releasing the DSS records at issue, I would find the trial court erred by entering the order *ex parte* and without prior notice to either Defendants or DSS. Lastly, since the Majority Opinion dismisses this appeal, the writ of supersedeas provides no further protection.

¶ 46        Respectfully, I dissent.